STATE of Wisconsin, Plaintiff-Respondent,

v.

Fidencio RUIZ, Defendant-Appellant.

Court of Appeals

*No. 96–1610–CR. Submitted on briefs April 23,
1997.—Decided August 7, 1997.*

(Also reported in 570 N.W.2d 556.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Suzanne Hagopian*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Gregory M. Posner-Weber*, assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

DYKMAN, P.J. Fidencio Ruiz appeals from a judgment convicting him of possession of marijuana with intent to deliver, while possessing a weapon, and failure to purchase drug tax stamps. Ruiz argues that: (1) his conviction for failure to purchase drug tax

stamps must be reversed because the drug tax stamp law is unconstitutional; (2) the evidence should have been suppressed because the anticipatory search warrant that allowed police to search his home was insufficient; and (3) the evidence should have been suppressed because the warrant allowed the police to enter his home without knocking and announcing their presence.

We conclude that the drug tax stamp law is unconstitutional. Therefore, we reverse that portion of Ruiz's conviction. We also conclude that the anticipatory search warrant was constitutionally sufficient. We remand the matter to the circuit court, however, for a hearing on the issue of whether a "no-knock" warrant was justified under the facts and circumstances of this case.

## BACKGROUND

On July 8, 1995, Milwaukee police seized a UPS package after a U.S. Customs drug detection dog "hit" upon the package, indicating that it contained a controlled substance. The package was addressed to Carlos Trejo at 221 Witter Street, Wisconsin Rapids, Wisconsin. After obtaining a search warrant, a Milwaukee police officer opened the package and found two compressed bricks of marijuana, each weighing ten pounds. On July 9, 1995, an investigator with the Wood County Sheriff's Department obtained the package from the Milwaukee police.

The Wood County investigator applied for an anticipatory no-knock search warrant. In his affidavit, the investigator stated that he had made arrangements with UPS to deliver the package to 221 Witter Street on July 10, 1995. The investigator further stated that "because of the value of the drugs [$48,000 to

$64,000], based upon his training and experience, an individual involved in drug trafficking on this level would be likely to arm themselves to protect themselves, their drugs, and the proceeds from the drug trafficking." The complaint requested a warrant to search 221 Witter Street and any persons on the premises, specifically Carlos Trejo, Frank Ruiz, whose name appeared on the utility bills for that address, and Dianira Ruiz, whose vehicle was parked at that address.

A search warrant was issued. The warrant provided in relevant part:

> WHEREAS, Investigator Timothy Ward, has complained . . . that on [July 10, 1995 in Wood County], in and upon . . . 221 Witter Street, City of Wisconsin Rapids, Wisconsin 54494, Carlos Trejo, Frank Ruiz, Dianira Ruiz, and any person(s) on said premises.

> There will be, upon delivery, located and concealed on the person(s) or premises certain things, to wit: A 19 x 13 x 12 inch UPS package addressed to Carlos Trejo at 221 Witter Street, Wisconsin Rapids, WI 54494, containing two compressed bricks of marijuana wrapped in cellophane weighing approximately 20 pounds [and other drug-related paraphernalia].

> Said items may constitute evidence of a crime; to-wit: Possession With Intent to Deliver a Controlled Substance, committed in violation of § 161.41, [STATS.] and prayed that a **NO KNOCK** Search Warrant be issued to search said premises for said property.

> NOW, THEREFORE, in the name of the State of Wisconsin, you are commanded forthwith to search said premises or person(s) thereon for said things
> . . . .

On July 10, 1995, Officer Robert Levendoske of the Wood County Sheriff's Department donned a UPS uniform and rode in a UPS truck, which was driven by a UPS security officer, from the sheriff's department to 221 Witter Street. Officer Levendoske went to the door with the package and knocked. Dianira Ruiz, Fidencio Ruiz's wife, answered. Levendoske advised her that he had a package for Carlos Trejo. Ruiz told Levendoske that Trejo was not home, but that she was authorized to accept packages for him. Ruiz took the package into the house and shut the door.

The police continued to conduct surveillance of the Ruiz residence after the delivery. Shortly after the package was delivered, Mrs. Ruiz went to the gas station and grocery store. About a half hour after she returned, four officers entered the home without knocking or announcing. Fidencio Ruiz was inside the residence. The officers found the opened UPS package, a duffle bag containing twenty one-pound bags of marijuana, a pistol and $2,500 in cash.

Fidencio Ruiz was charged with possession of marijuana with intent to deliver, while possessing a weapon, and failure to purchase drug tax stamps. Ruiz moved the trial court to suppress evidence seized from his home because the search was unconstitutional. He also moved the court to dismiss the tax stamp charge because the drug tax stamp statute was unconstitutional. After the trial court denied both motions, Ruiz pleaded guilty to the charges. He now appeals.

## DRUG TAX STAMP CONVICTION

■
Ruiz argues that his conviction for violating the drug tax stamp statute must be reversed because the statute is unconstitutional. In *State v. Hall*, 207 Wis.

2d 54, 557 N.W.2d 778 (1997), subsequent to Ruiz's conviction, the supreme court held that the drug tax stamp law is unconstitutional because it violates the right against self-incrimination guaranteed by the United States and Wisconsin constitutions. Accordingly, we reverse the drug tax stamp conviction.

## ANTICIPATORY SEARCH WARRANT

■ Ruiz argues that evidence obtained from his home should have been suppressed because the anticipatory search warrant authorizing the search was insufficient. An "anticipatory search warrant" is "a warrant that has been issued before the necessary events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void." *State v. Falbo*, 190 Wis. 2d 328, 334, 526 N.W.2d 814, 816 (Ct. App. 1994) (quoting *United States v. Garcia*, 882 F.2d 699, 702 (2d Cir. 1989)). "[I]t is not necessary that contraband be presently located at the place described in the warrant if there is probable cause to believe that it will be there when the search warrant is executed." *Id.* In *Falbo*, we concluded that anticipatory search warrants are not unconstitutional *per se* and, in the proper circumstances, may be an effective tool in fighting criminal activity as well as protecting individual Fourth Amendment rights. *Id.* at 335, 526 N.W.2d at 816–17.

Ruiz first contends that the warrant was deficient because it allowed the police to search the home before the package was delivered. In *United States v. Garcia*, 882 F.2d 699, 703–04 (2d Cir. 1989), the court stated that a magistrate issuing an anticipatory search warrant "should protect against its premature execution by listing in the warrant conditions governing the exe-

cution which are explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." In support of his argument, Ruiz cites *United States v. Ricciardelli*, 998 F.2d 8, 12 (1st Cir. 1993), which states that "a future search of the destination must be made expressly contingent upon the contraband's arrival there."

The State cites *United States v. Leidner*, 99 F.3d 1423 (7th Cir. 1996), in support of its argument that the warrant was constitutionally sufficient. In *Leidner*, the court also faced the argument that an anticipatory search warrant was insufficient because it did not contain a sufficiently clear statement that the officers must delay executing the warrant until after the contraband was delivered. The court refuted the argument, stating:

> [W]e find no cases from this circuit requiring (as a matter of constitutional law) anticipatory warrants to explicitly state that the expected delivery must occur prior to execution of the warrant. Hence, we do not believe that an anticipatory search warrant's constitutionality is doomed by the absence of such language even though other circuit courts in reviewing similar challenges to anticipatory warrants have significantly focused on the presence or absence of such conditioning language. While *Garcia* and its progeny may support a preference that anticipatory search warrants contain such language, we are not compelled by the Constitution to require it since all that is constitutionally required is that the search warrant be supported by probable cause.

*Id.* at 1427 (citation omitted; footnotes omitted). The court concluded that a warrant need not explicitly state

206

that it is valid only after delivery has occurred when such a requirement is logically implicit. *Id.* at 1427 n.4.

We agree with *Leidner* that it is not necessary that a warrant explicitly state that delivery must take place before the search is initiated when the requirement of delivery is sufficiently implied in the warrant. *Garcia* provided that anticipatory search warrants must contain specific conditions so as to prevent government agents from prematurely executing them. Therefore, we do not believe that the delivery requirement must always be stated expressly, but it must be stated clearly enough so as to avoid any misunderstanding or manipulation by the officers executing the warrant.

Here, according to the warrant, Investigator Timothy Ward stated that on July 10, 1995, there would be, upon delivery, a UPS package containing twenty pounds of marijuana at 221 Witter Street, or upon the persons at that address. The warrant further stated that the investigator asked for a no-knock warrant to search the premises for "said property," i.e., the marijuana and drug paraphernalia. The warrant was issued authorizing the search of "said premises or persons(s) thereon for said things," i.e., the search of 221 Witter Street and its occupants for the marijuana.

The warrant states that it was issued for the search of 221 Witter Street for marijuana, which would be located at that address on July 10, 1995 "upon delivery." The warrant clearly implies that the search was not to commence until the marijuana was delivered. Until delivery, the contraband for which the warrant was issued would not be on the premises. We do not believe that the warrant could be misunderstood by officers as allowing a search of the premises before

delivery. Therefore, we conclude that it is sufficiently specific.

Ruiz argues that by commanding the search of the premises "forthwith," the warrant authorized the immediate search of the premises, before delivery. In *United States v. Ruddell*, 71 F.3d 331, 333–34 (9th Cir. 1995), the court rejected a similar argument:

> Ruddell . . . argues that the warrant's statement that, "[y]ou are hereby commanded to search forthwith the person named for the property specified . . . ," mistakenly authorized immediate execution of the search warrant. The district court concluded that, "[t]he fact that an anticipatory warrant contains the term 'forthwith' does not mean the issuing magistrate judge expected the warrant to be executed prior to the occurrence of a specified event." In *United States v. Nepstead*, 424 F.2d 269, 271 (9th Cir.), *cert. denied*, 400 U.S. 848, 91 S. Ct. 50, 27 L.Ed.2d 86 (1970), we held that "forthwith" execution of a warrant may mean up to ten days after issuance. Moreover, the language of the remainder of the warrant, which expressly conditions execution "upon the controlled delivery" of the videotape, belies the construction which Ruddell urges upon us, and supports the district court's finding that the warrant was not to be executed until after delivery.

Ruiz argues that *Ruddell* is distinguishable because in *Ruddell* the warrant expressly conditioned its execution upon delivery of the contraband, while here such condition was not expressly stated. We have already concluded that the delivery requirement does not need to be expressly stated in order to be sufficiently stated. In light of the language contained in the remainder of the warrant, we do not believe that the

use of the word "forthwith" would mislead an officer into prematurely executing the warrant. Because the marijuana would be located on the premises only after delivery, it would be clear to any officer that execution of the warrant must wait until after that time.

Ruiz next argues that the warrant was invalid because the affidavit failed to specify the role that the police would play in delivering the package. Here, the affidavit stated that Investigator Ward "has made arrangements with the United Postal Service that on July 10, 1995, the delivery of said package will be made to 221 Witter Street, Wisconsin Rapids, WI 54494." The affidavit did not state, however, that an officer would dress as a UPS employee and personally deliver the package. In *United States v. Garcia*, 882 F.2d 699, 703 (2d Cir. 1989), the court stated that "affidavits supporting the application for an anticipatory warrant must show, not only that the agent believes a delivery of contraband is going to occur, but also *how* he has obtained this belief, how reliable his sources are, and what part government agents will play in the delivery."

Ruiz argues that this case is analogous to *Illinois v. Ross*, 642 N.E.2d 914 (Ill. App. Ct. 1994), *aff'd*, 659 N.E.2d 1319 (Ill. 1995). In *Ross*, the affidavit stated that the affiant had "made arrangements with UPS to have the contents" of the package delivered to the defendant's address. *Id.* at 918. The court concluded that the affidavit was not sufficiently specific because it did not establish the role that police would play in the actual delivery and search operation, as required by *Garcia. Id.* at 918–19.

We decline Ruiz's invitation to rely on *Ross* for two reasons. First, the analysis in *Ross* was dicta. Before discussing whether the affidavit sufficiently specified the role police were to play in the delivery, the *Ross*

court concluded that anticipatory search warrants were impermissible in Illinois because they failed to comply with that state's statutory warrant requirements. *Id.* at 917. The court did not need to reach the issue of whether the affidavit was sufficiently specific.

Secondly, we believe that *Ross* construed the *Garcia* affidavit requirements too narrowly. The purpose of. the *Garcia* affidavit requirements is to give magistrates and judges:

> [I]ndependent evidence giving rise to probable cause that the contraband will be located at the premises at the time of the search. . . . Judicial officers must then scrutinize whether there is probable cause to believe that the delivery will occur, and whether there is probable cause to believe that the contraband will be located on the premises when the search takes place.

*Garcia*, 882 F.2d at 703. It is not necessary in every instance to describe the precise role that the police will play in delivery in order to provide probable cause that delivery will occur and that the contraband will be located at the premises at the time of the search.

Here, the affidavit stated that the investigator made arrangements with UPS for delivery of the package to 221 Witter Street on July 10, 1995. This is sufficient to give an independent magistrate probable cause to believe that delivery would occur on July 10 and that the package would be on the premises at the time of the search. In *Illinois v. Gates*, 462 U.S. 213, 238 (1983), the Supreme Court provided:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of

210

knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

The belief that a UPS package destined for 221 Witter Street on July 10, 1995, would in fact be delivered to 221 Witter Street on July 10, 1995, is in accord with common sense.

## "NO-KNOCK" WARRANT

Ruiz argues that evidence seized from his home should have been suppressed because the warrant impermissibly allowed the police to enter his home without knocking and announcing their presence. Under common law, when seeking to enter a dwelling in execution of a search warrant, police officers generally must announce their presence and purpose and allow time for the door to be opened. *State v. Cleveland*, 118 Wis. 2d 615, 622, 348 N.W.2d 512, 516 (1984). In *State v. Stevens*, 181 Wis. 2d 410, 511 N.W.2d 591 (1994), the supreme court adopted an exception to this knock-and-announce rule when the police have a warrant to search a residence for evidence of drug dealing. *Id.* at 424–25, 348 N.W.2d at 595. "[I]n all such searches the police are justified in dispensing with the rule of announcement and making a no-knock entry." *Id.* at 425, 348 N.W.2d at 595.

In *Wilson v. Arkansas*, 514 U.S. 927, 930 (1995), the Supreme Court held that the common law knock-and-announce principle forms a part of the Fourth Amendment reasonableness inquiry. The Court noted, however, that not all unannounced entries are unreasonable. *Id.* at 934. Rather, an unannounced entry may be justified to avoid physical violence, to avoid the

destruction of evidence, or when pursuing an escaped prisoner into his dwelling. *Id.* at 935–36. The Court did not enumerate all countervailing factors, but left it to the lower courts to determine "the circumstances under which an unannounced entry is reasonable under the Fourth Amendment." *Id.* at 936.

In *State v. Richards*, 201 Wis. 2d 845, 549 N.W.2d 218 (1996), the Wisconsin Supreme Court examined its position in *Stevens* in light of *Wilson*. The *Richards* court concluded that *Wilson* did not prohibit blanket rules. Rather, the court believed that *Wilson* allowed lower courts to adopt blanket rules when such rules are supported by the standard of "reasonableness." *Id.* at 855, 549 N.W.2d at 222. *Richards* concluded that "exigent circumstances are always present in the execution of search warrants involving felonious drug delivery" and reaffirmed *Stevens*. *Id.* at 847–48, 549 N.W.2d at 219.

The United States Supreme Court granted review in *Richards*. The Supreme Court disagreed with the Wisconsin court's conclusion that the Fourth Amendment permits a blanket exception to the knock-and-announce requirement for the execution of search warrants in felony drug investigations. *Richards v. Wisconsin*, 117 S. Ct. 1416, 1418 (1997). The Court reasoned:

> [T]he fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particu-

212

lar entry justified dispensing with the knock-and-announce requirement.

In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. . . . This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*Id.* at 1421–22.

Here, a no-knock search warrant was issued. Upon Ruiz's motion to suppress, the trial court upheld the warrant under the blanket exception of *Stevens*. But the *Stevens* blanket exception was overruled by *Richards v. Wisconsin*, 117 S. Ct. 1416 (1997). The *Richards* Court determined that the question of whether exigent circumstances exist that justify a "no knock" entry must be determined "under the particular circumstances" of each case. *Id.* at 1421.

■

The question of whether the particular circumstances warrant an unannounced entry must be determined as of the time the warrant was executed. As the supreme court stated in *State v. Cleveland*, 118 Wis. 2d 615, 630, 348 N.W.2d 512, 520 (1984):[1]

We . . . wish to emphasize that the justification for dispensing with the announcement requirement

---

[1] The *Stevens* court overruled *Cleveland* when it established the blanket exception to the knock-and-announce requirement. *See State v. Stevens*, 181 Wis. 2d 410, 435, 511 N.W.2d 591, 599 (1994). Because the *Stevens* blanket exception was overruled by *Richards v. Wisconsin*, 117 S. Ct. 1416 (1997), we return to *Cleveland* for guidance.

must be judged as of the time the warrant is executed. Even if the police have no reason to seek advance authorization for a no-knock entry or have failed to seek advance authorization or if advance authorization was denied, they may still make a no-knock entry to execute the warrant if facts existing at the time of entry give them reasonable cause to believe that a no-knock entry is necessary to execute the warrant safely or successfully. Moreover, . . . even if the search warrant grants the officers advance authorization of unannounced entry to execute the warrant, a no-knock entry should not be made if between the time the warrant is issued and the time it is executed new information comes to the officers' attention that obviates the necessity of a no-knock entry.

Because the trial court determined that a no-knock warrant was justified under the blanket exception of *Stevens*, it never reached the issue of whether the circumstances at the time of entry allowed the police to dispense with the knock-and-announce requirement. Therefore, we remand the matter for an evidentiary hearing to determine whether exigent circumstances were in existence at the time the warrant was executed.

Ruiz argues that a remand is unnecessary because three officers testified at the preliminary hearing about the search of his home and because the State had an opportunity to put on additional evidence at the suppression hearing. We reject Ruiz's argument. First, the issue at the preliminary hearing was not whether exigent circumstances justified the unannounced entry and search of Ruiz's home, and therefore the State had no reason to adduce evidence there that the no-knock search was justified. Second, the State had no reason to put forth evidence of exigent circumstances at the sup-

214

pression hearing because, under *Stevens*, the search of Ruiz's home fell under a blanket exception to the knock-and-announce requirement. The State had no reason to know that the United States Supreme Court would subsequently overrule the *Stevens* blanket exception.

Finally, the State argues that Ruiz has waived his argument that the no-knock search was unconstitutional because Ruiz did not sufficiently raise this argument in his brief. In his brief, Ruiz argued:

> Mr. Ruiz believes that in light of *Wilson v. Arkansas*, 115 S. Ct. 1914 (1995), [the *Stevens*] blanket exception violates the Fourth Amendment. However, the supreme court rejected this claim and reaffirmed the blanket exception in *State v. Richards*, 201 Wis. 2d 839, 842, 549 N.W.2d 218 (1996), *cert. granted*, 117 S. Ct. 679 (1997). Because this court is bound by *Stevens* and *Richards*, Mr. Ruiz does not elaborate the arguments further in this brief. But because Mr. Ruiz believes that *Stevens* and *Richards* were wrongly decided, and to preserve the issue for further review, he specifically raises here the constitutional challenge rejected by the supreme court in *Richards*.

Ruiz sufficiently raised the issue. Ruiz correctly notes that we are bound by Wisconsin Supreme Court precedent. *See State v. Whitaker*, 167 Wis. 2d 247, 261, 481 N.W.2d 649, 655 (Ct. App. 1992). It would have been futile for Ruiz to reiterate the arguments proffered in *Richards* because those arguments had already been rejected by the Wisconsin Supreme Court. When Ruiz filed his brief, the U.S. Supreme Court had not yet reversed *Richards*. Because Ruiz argued all that he practically could given the fact that the blanket exception of *Stevens* was still in effect when he filed his

brief, we conclude that the issue was sufficiently raised for further review.

*By the Court.*—Judgment reversed and cause remanded.