STATE of Wisconsin, Plaintiff-Respondent,

v.

Domingo G. RAMIREZ, Defendant-Appellant.

Court of Appeals

*No. 98–0996–CR. Oral argument April 28, 1999.—Decided June 2, 1999.*

(Also reported in 598 N.W.2d 247.)

■

On behalf of the defendant-appellant, there were briefs and oral argument by *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general. There was oral argument by *Warren D. Weinstein*.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J. When the State seizes a package from the mail and searches it prior to its delivery to a person's residence, who has the burden of establishing the existence of an expectation of privacy toward the package when the name on the package is not that of the resident? We hold that the defendant in such a case has the initial burden of establishing some reasonable expectation of privacy in the package. This burden is minimal. Here, although it is true that the defendant presented no evidence whatsoever to indicate that he thought the package was for him, we are satisfied that this was because the trial court insisted that, to establish standing, the defendant had to testify that he *knew* the package was for him and he expected delivery. That is too high a threshold. We will therefore explain what is needed to establish standing and reverse and remand to give the defendant the opportunity to meet that burden.

Domingo G. Ramirez was charged with two counts of delivery of a controlled substance and one count of possession with intent to deliver. The possession charge grew out of a police raid on his apartment after he had received and opened a package of marijuana sent in the mail from Texas. Relying on information

from an informant who had bought marijuana from Domingo[1] in the past, the police contacted a postal inspector and asked him to be on the lookout for a package sent to Domingo's address. The inspector seized a package addressed to a "Gabriel Ramirez" at Domingo's address. A drug dog alerted to the package, and, based on this, the postal inspector obtained a warrant to search the package. It contained five bundles of marijuana. The police resealed the package, enclosing a device that would signal them when the package was opened. An anticipatory search warrant was obtained and the package was delivered to Domingo's residence. When Domingo answered the door, the postal agent said, "I have a package for Gabriel Ramirez." Domingo responded that he was Mr. Ramirez and accepted the package. When the package was opened, officers entered Domingo's apartment, found the marijuana and arrested him. Following a jury trial, Domingo was convicted on both the delivery and possession counts.

Domingo first claims that the police violated his Fourth Amendment rights when they seized the package from the mail and searched it. Prior to trial, Domingo moved to suppress the marijuana that had come in the package as tainted evidence resulting from an unreasonable search and seizure. At the motion hearing, the trial court stated that "it would be the defendant's burden to establish that it was a package intended for him." The court invited Domingo "to take the stand and present evidence that would show that this package was consigned to him and that for some reason it was sent under a different name." Later the court suggested that in order to show a privacy interest

---

[1] We refer to the defendant Domingo Ramirez by his first name to avoid confusion with Gabriel Ramirez, the name that appeared on the seized package.

in a package with a different name, the recipient must show that there had been some agreement with the sender to address the package with a different name. Ultimately, the court ruled that Domingo had no reasonable expectation of privacy in the package because it was addressed to Gabriel, and thus Domingo did not have standing to challenge the warrantless search of his apartment.

■

In order to challenge a warrantless search or seizure, one must show a legitimate expectation of privacy in the thing or place searched or seized. *See State v. Fillyaw*, 104 Wis. 2d 700, 710, 312 N.W.2d 795, 800–01 (1981). This showing entails both a manifestation of a subjective expectation of privacy as well as an indication that the privacy interest is one that society is willing to recognize as reasonable. *See State v. Rewolinski*, 159 Wis. 2d 1, 13, 464 N.W.2d 401, 405 (1990). This standing requirement reflects the fact that Fourth Amendment rights are personal, and thus may not be asserted vicariously. *See Fillyaw*, 104 Wis. 2d at 710, 312 N.W.2d at 800. The burden of establishing that the search or seizure violated the challenger's rights, and not those of some third party, is on the challenger. *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). Whether a party has standing to challenge the constitutionality of a search is a question of law we review de novo. *See Fillyaw*, 104 Wis. 2d at 711, 312 N.W.2d at 801. Domingo urges us to establish a bright-line rule regarding standing to challenge seized mail. Under Domingo's theory, when a package is delivered to an address, a person living at that address is presumed to have a legitimate expectation of privacy in the package. The resident should not have to give any explanation as to why he or she thought the package

was meant for him or her, even if the name on the package is not the same as the resident's name. Once the accused shows the package was sent to his or her address, the burden shifts to the State to show the existence of a third party with the name on the package.

In its briefs, the State argued that in order to establish a legitimate expectation of privacy in a package addressed to someone else, the challenger must show that he or she uses the name on the package as an alias or alter ego. In support, the State cited two federal cases, both concerning warrantless searches of packages that were not addressed to the recipient. In *United States v. Pierce*, 959 F.2d 1297 (5th Cir. 1992), the court denied standing where the defendant, Pierce, sought to challenge the search of a package addressed to Hazel Crumpton, a coconspirator. *See id.* at 1300, 1303. Pierce had no standing because "the package was not addressed to a fictitious entity, or to an alter ego of Pierce, but to Crumpton." *Id.* at 1303 n.11. A subsequent case, *United States v. Villarreal*, 963 F.2d 770 (5th Cir. 1992), dealt with the use of a fictitious name, Roland Martin, rather than the name of a known third party. *See id.* at 774. There, one of the codefendants had been identified to a third party as Roland Martin. *See id.* Furthermore, both codefendants had gone to lengths to retrieve two packages addressed to Roland Martin. *See id.* The court found these facts sufficient to show that one of the two was using Roland Martin as an alias. *See id.* at 774–75.

█

We conclude that both Domingo's residential presumption of standing and the alter ego analysis proffered by the State in its brief go too far. Whether sufficient facts have been brought forth to demonstrate

a reasonable expectation of privacy must be determined on a case-by-case basis. There are many ways a defendant may show that a privacy interest exists: use of an alias is one. And perhaps in some cases it would be enough, as the State conceded at oral argument, for the defendant to show that the package came to his or her address and the addressee had the same last name. In fact, at oral argument, the State appeared to abandon its position that a defendant has to prove he or she used the name as an alter ego in favor of a case-by-case approach.

■

Be that as it may, the State did assert at oral argument, and we agree, that the record contains no evidence whatsoever to demonstrate Domingo's expectation of privacy. *Cf. Fillyaw*, 104 Wis. 2d at 711, 312 N.W.2d at 801 (where trial court made no findings of fact, supreme court reviewed record to find standing). No one appears to have disputed that the package was delivered to Domingo's address, that he accepted it, and that the addressee was Gabriel Ramirez. But absent a stipulation or some testimony to that effect, we have no facts upon which to base our determination. *See Harwick v. Black*, 217 Wis. 2d 691, 703, 580 N.W.2d 354, 359 (Ct. App. 1998) ("The court of appeals is not a fact-finding court."). While it was Domingo's burden to put on evidence of his expectation of privacy, *see Rewolinski*, 159 Wis. 2d at 13–16, 464 N.W2d at 405–07, our confidence in the proceeding is undermined by the trial court's apparent misunderstanding of the quantum of proof necessary to establish a privacy interest. Domingo did not need to show that he was expecting a package, as the trial court seemed to suggest. But he did need to present some reason as to why he would expect that the package, when it came, was

intended for him. We thus remand for a new hearing on the standing issue.[2]

It is not our purpose here to establish a bright-line list of pertinent questions that may be asked of a defendant in order to establish that the defendant had an expectation of privacy in a package delivered to him or her. As we have already stated, each case will rest on its own facts. But we do feel it would be instructive to repeat the colloquy between the court and the assistant attorney general at oral argument regarding what kind of evidence might be enough to show standing. The court asked the assistant attorney general to assume the following hypothetical: Domingo takes the stand and testifies that he lives at a certain address, his last name is Ramirez, he received a package at his residence and the package had the last name Ramirez on it. Would this be enough to satisfy the burden? The assistant attorney general replied that this would meet the defendant's burden of going forward with the evidence and the burden would then shift to the State to show other facts in rebuttal, e.g., the existence of a third party with the same name as the addressee of the package or that someone else named Ramirez lived at the house. But the assistant attorney general conceded that this foregoing evidence makes it "pretty clear" that the package could have been intended for Domingo; and, generally speaking, if the evidence establishes that the recipient thought the package, delivered to him at his address, with the same last name, probably was intended for him, then he has

---

[2] We note that any testimony Domingo gives to establish standing may not be used against him at trial, *see State v. Christel*, 61 Wis. 2d 143, 153, 211 N.W.2d 801, 806 (1973), except for impeachment purposes, *see State v. Schultz*, 152 Wis. 2d 408, 426, 448 N.W.2d 424, 431 (1989).

established his expectation of privacy whether he actually knew it was meant for him or not. Again, we offer this colloquy simply as a guidepost.

Domingo's second challenge is to the no-knock warrant to search his apartment after the package was delivered. The warrant was issued in reliance upon the blanket exception to the knock-and-announce rule laid down for felony drug cases in *State v. Richards*, 201 Wis. 2d 845, 866, 549 N.W.2d 218, 227 (1996), *aff'd*, 520 U.S. 385 (1997). This blanket exception was struck down by the United States Supreme Court. *See Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). Thus, we must remand for an evidentiary hearing to determine whether there were exigent circumstances that justified the issuance of a no-knock search warrant. *See State v. Ruiz*, 213 Wis. 2d 200, 214, 570 N.W.2d 556, 562 (Ct. App. 1997).

Domingo finally contends that we should order a new trial in the interest of justice because "the real controversy has not been fully tried." Section 752.35, STATS. Domingo claims the submission of poorly recorded audio tapes to the jury may have exposed the jurors "to information that clouds the consideration of the critical issues in the case." Conversations between a police informant and Domingo had been recorded and the recordings were played at trial. During deliberation, the jury requested the recordings and a tape player. Over defense counsel's objection, the trial court submitted the tapes to the jury. Domingo claims that the tapes were of such poor quality that "it is difficult to even speculate how the jurors utilized the tapes" and thus "[t]he potential for prejudice . . . warrants a new trial."

We decline to exercise our discretionary reversal power in this case. One of the reasons for which we may reverse under § 752.35, STATS., is that the issue has not been fully tried because "the jury had before it evidence not properly admitted." *State v. Wyss*, 124 Wis. 2d 681, 735, 370 N.W.2d 745, 771 (1985), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). Here, Domingo does not claim that the tapes should not have been admitted. The jury heard the tapes at trial and heard the informant's testimony regarding the taped conversations. The submission of the tapes during deliberation did not "so cloud[ ] a crucial issue that it may be fairly said that the real controversy was not fully tried." *Id.*

In conclusion, we remand this case to the trial court for a standing hearing in accord with this opinion and for a determination whether there were exigent circumstances justifying the no-knock warrant.

*By the Court.*—Judgments reversed and causes remanded with directions.