STATE of Wisconsin, Plaintiff-Respondent,

v.

Dwan J. EARL, Defendant-Appellant.

Court of Appeals

*No. 2008AP1580–CR. Submitted on briefs April 9, 2009.
—Decided June 24, 2009.*

2009 WI App 99

(Also reported in 770 N.W.2d 755.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark D. Richards* and *Christy M. Hall* of *Richards & Hall, S.C.*

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Christopher G. Wren*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Anderson, P.J., Snyder and Neubauer, JJ.

¶ 1. NEUBAUER, J. Dwan J. Earl appeals from a judgment of conviction for possession of marijuana with intent to deliver, contrary to WIS. STAT. § 961.41(1m)(h)2. (2007–08).[1] Earl contends that the trial court erred in denying his motion to suppress evidence of the contents of a Federal Express package which was not addressed to him and was sent to the address of a vacant apartment. Earl argues police violated his constitutional rights by unreasonably seizing and searching the package without a warrant. We reject Earl's argument. We conclude that Earl failed to establish that he had a legitimate expectation of privacy in the package at the time it was searched. We uphold the trial court's order denying his motion to suppress and affirm the judgment.

## BACKGROUND

¶ 2. The record and transcript from the suppression hearing provides the following facts and procedural history. In early March 2007, Chris Kazanecki, a

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

FedEx operations manager, advised Detective Kenneth Polzin of the Kenosha County Sheriff's Department about suspicious packages addressed to "712 Sheridan Road, No. 204." The apartment manager at that address had advised a FedEx driver that the apartment was vacant. On March 16, 2007, at 8:35 a.m., Polzin again spoke with Kazanecki about the arrival of another suspicious package addressed to 712 Sheridan Road, No. 204. Prior to that second call, Polzin confirmed that Apartment 204 at 712 Sheridan Road was vacant.

¶ 3.　After speaking with Kazanecki, Polzin called Officer Kenneth Free, the group supervisor in the Lake County, Illinois, Metropolitan Enforcement Group, who went to the FedEx hub with a "narcotic-sniffing" dog. Shortly thereafter, Free informed Polzin that the dog had alerted on the package and he would be bringing the package to Polzin at the public safety building in Kenosha.

¶ 4.　Polzin testified that because the package was a priority overnight shipment from Seattle to an address on Sheridan Road, it had to be delivered by 10:30 a.m. Polzin opened the package addressed to "Mark Harris" and discovered "peanut-type stuffing" and grocery bags containing heat-sealed bags filled with a substance which smelled like marijuana. Polzin opened one of the bags and a test of the substance produced a positive result for THC, or marijuana. Polzin resealed the package and met Kazanecki at a FedEx truck. Polzin rode in the back of the truck when the package was delivered to 712 Sheridan Road. Kazanecki went to the door of Apartment 204 but returned to the truck with the package. As they drove through the apartment complex, an individual in a "silver GM-type vehicle" approached the truck, conversed with Kazanecki, and took the package. That individual was later identified as Dwan Earl.

The vehicle was subsequently stopped by the Kenosha County Controlled Substance Unit and the package recovered.

¶ 5. On March 19, 2007, the State filed a criminal complaint against Earl alleging possession with intent to deliver THC, second and subsequent offense, contrary to WIS. STAT. § 961.41(1m)(h)4. Earl filed a motion to suppress evidence recovered from the seizure and search of the intercepted package. In opposing the motion, the State questioned Earl's standing to challenge the search based on his lack of a reasonable expectation of privacy in the package at the time of the search. At the suppression hearing, the trial court asked the parties to address the issue of standing first. Defense counsel made the following offer of proof:

> [I]f the court wishes, Mr. Earl would testify that on the date in question, March 16th of '07, he went to that location. He knew that a package was arriving, that the package was addressed to an individual by the name of Mark Harris. It was addressed to an apartment where he had previously resided, off and on, with his girl-friend, the mother of his child . . . . He went to the location, identified himself, picked up the package. He was stopped.

In response to the court's inquiry as to how he identified himself and, in particular, whether he identified himself as Mark Harris, defense counsel stated:

> [Defense counsel] . . . . He said he identified himself. And he said I'm looking for a package that was to be delivered to that address for Mr. Harris.
>
> [Assistant District Attorney] I believe he identified himself as Dwan Earl.

643

[The Court] Okay. Dwan Earl picking up a package for Harris. He had some knowledge of the name on the package.

[Defense counsel] Yes.[2]

¶ 6. In his offer of proof, defense counsel stated that Earl's girlfriend would testify that she previously lived at the address and that Earl had spent nights at that address.[3] While he acknowledged that he may have seen Earl with a prior tenant on occasion, the property manager testified that he did not know anyone by the name of Dwan Earl or Mark Harris to have rented an apartment at the Sheridan Road property. The property manager testified that Apartment 204 was vacant on March 16 and had been vacant since the previous January or early February. Earl provided no information about the sender of the package at the suppression hearing.[4]

¶ 7. The trial court denied Earl's motion, finding that, while Earl had a legitimate expectation of privacy in the package, the dog sniff did not constitute a search of the package and provided the police with probable cause to search its contents. Earl subsequently pled guilty to the charge. He now appeals.

[2] Defense counsel later again confirmed that the defendant identified himself as Dwan Earl to the FedEx person.

[3] Earl relied exclusively on his offer of proof, while the State advised that it would, and it did, put in evidence on the standing issue, after the trial court ruled that Earl had standing to challenge the search.

[4] The record indicates that at the time of sentencing, the sender of the package had not been identified. At that time, when the court asked Earl to identify who else was involved, he declined to do so.

## DISCUSSION

¶ 8. On appeal, Earl challenges (1) the initial seizure of the package from the stream of commerce, (2) the transport of the package across state lines without obtaining a warrant, and (3) the opening of the package without a warrant or valid warrant exception. However, the State contends that Earl failed to allege a legitimate expectation of privacy sufficient to establish that his Fourth Amendment rights were violated by the challenged search and seizure. We agree that Earl failed to meet his burden to establish a legitimate expectation of privacy in the package searched.[5]

■■■

¶ 9. Sealed packages sent through the mail are entitled to full protection under the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 114 (1984). In order to challenge a warrantless search or seizure, one must show a legitimate expectation of privacy in the thing or place searched or seized. *State v. Ramirez*, 228 Wis. 2d 561, 566, 598 N.W.2d 247 (Ct. App. 1999). This showing entails both a manifestation of a subjective expectation of privacy as well as an indication that the privacy interest is one that society is willing to recognize as reasonable. *Id.* This standing requirement reflects the fact that Fourth Amendment rights are personal, and thus may not be asserted vicariously. *Id.* The burden of establishing that the

---

[5] Because this issue is dispositive, we need not address the remaining issues. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (if a decision on one point disposes of the appeal, we need not address the other issues raised); *see also State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

search or seizure violated the challenger's rights, and not those of some third party, is on the challenger. *Id.*; *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). Whether sufficient facts have been brought forth to demonstrate a reasonable expectation of privacy must be determined on a case-by-case basis. *Ramirez*, 228 Wis. 2d at 567–68. Whether a party has standing to challenge the constitutionality of a search is a question of law we review de novo. *Id.* at 566.[6]

## Earl Failed to Establish a Reasonable Expectation of Privacy in the Package.

¶ 10. In *Ramirez*, we held that "[w]hen the State seizes a package from the mail and searches it prior to its delivery to a person's residence," the defendant has an initial minimal burden of establishing some reasonable expectation of privacy in the package when the name on the package in question is not that of the resident. *Id.* at 564. In that case, the defendant, Domingo Ramirez, accepted a package delivered to his residence that was addressed to Gabriel Ramirez. *Id.* at 564–65. Domingo advised the postal agent that he was "Mr. Ramirez" when he accepted the delivery. *Id.* at 565. Because of the trial court's misunderstanding over the "quantum of proof necessary to establish a privacy

---

[6] In *Rakas v. Illinois*, 439 U.S. 128, 140 (1978), the Supreme Court sought to dispense with the focus on a defendant's "standing" to assert Fourth Amendment rights in favor of a substantive analysis of whether "the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." Nevertheless, courts have continued to use the term "standing" since *Rakas* as "shorthand for the existence of a privacy or possessory interest sufficient to assert a Fourth Amendment claim." *United States v. Daniel*, 982 F.2d 146, 149 n.2 (5th Cir. 1993).

interest," we remanded for an evidentiary hearing on whether Domingo Ramirez had a reasonable expectation of privacy in the package he accepted at his residence. *Id.* at 568–69.

¶ 11. In his motion to suppress, Earl argued that he had a legitimate expectation of privacy in the package addressed to a fictitious Mark Harris to raise a Fourth Amendment challenge. Citing to *United States v. Pitts*, 322 F.3d 449 (7th Cir. 2003), Earl argued that individuals who send and receive packages using fictitious names have a reasonable expectation of privacy in the package. In *Pitts*, the Court of Appeals for the Seventh Circuit stated that under the Fourth Amendment "the expectation of privacy for a person using an alias in sending or receiving mail is one that society is prepared to recognize as reasonable." *Id.* at 459. *Pitts* is factually distinguishable and, as discussed below, the court's analysis supports rejection of Earl's arguments.

¶ 12. That Earl knew the package was arriving and that it would be addressed to Mark Harris does not establish a possessory interest or a reasonable expectation of privacy in the package. First, Earl did not testify at the suppression hearing and the offer of proof fails to identify the name Mark Harris as Earl's alter ego or alias. To the contrary, Earl's offer of proof established that the package was *not* his—he identified himself, Dwan Earl, and told the FedEx person that he was picking up the package *for* Mark Harris. In short, Earl's offer of proof established that he was neither the addressee nor the intended recipient.

¶ 13. Moreover, Earl was not a resident at the delivery address. No one was. It is of little import that Earl's girlfriend lived there previously and that he stayed there at times—the apartment was vacant and it

had been for at least a month. Although Earl claims that he was prepared to pick up the package that day, the fact remains that the lack of *either* a valid name or a valid address on the package rendered the package completely outside of Earl's control while in transit. Indeed, Earl did not dispute the State's claim that he could not have presented the proper identification to claim the package at the FedEx office.

¶ 14. In *Pitts*, Erik Alexander, who was the only occupant at the residence to which a package sent to "Bruce Bones" was addressed, denied that he was expecting a package and refused delivery when contacted by the postal agent. *Id.* at 452–53. The court found that he had no standing because he had abandoned the package. *Id.* at 454. The court also found that the sender of the package, Pitts, who used a false name and address, had abandoned the package because he had no ability to retrieve it, despite the fact that he had a tracking number. *Id.* at 456–57. The court held that "[t]he defendants' subjective desire to maintain control of the package [was] irrelevant . . . in light of the external manifestations of their intent." *Id.* at 456.

¶ 15. That Earl may have had a subjective desire to ultimately possess the package—when he flagged down the FedEx driver on the street after a failed delivery attempt to the vacant apartment—is irrelevant in light of the facts which manifest a clear intent to *disassociate* Earl from the package. The package was addressed to a fictitious name at a vacant address, Earl stated that the package was not his, and no information was provided about the sender. While Pitts's inability to retrieve the package and Alexander's refusal to accept delivery both amounted to abandonment, or a relinquishment of a property interest in the package, *id.* at

456–57, Earl failed to show that he had the ability to possess or control the package in the first instance.[7]

¶ 16. We know of no case addressing whether a recipient has a legitimate expectation of privacy in a package where the sender's identity is unknown and the recipient's name is fictitious and the address vacant. The court's decision in *United States v. DiMaggio*, 744

---

[7] A number of courts have concluded that even an intended recipient of an item that has been addressed and sent to another actual person has no reasonable expectation of privacy where it was the actual addressee who could control the use of and access to the item. *See, e.g., United States v. Givens*, 733 F.2d 339, 341–42 (4th Cir. 1984) (packages neither addressed to the defendants nor to some fictitious entity which is their alter ego, but to some actual third party, lack legitimate expectation of privacy); *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992) ("even if [the defendant] claimed that he was the intended recipient of the package, this would not confer a legitimate expectation of privacy, because it was addressed to, and received by, another"). Indeed, courts have found no standing even when the actual third person agreed to give the package to the defendant. *See United States v. Smith*, 39 F.3d 1143, 1145 (11th Cir. 1994) (where defendant was neither the sender nor the addressee, and he gave "equivocal testimony regarding his ownership interest in the letter," the addressee's agreement to give the letter to him did not confer a legitimate expectation of privacy); *United States v. DiMaggio*, 744 F. Supp. 43, 44 n.2, 45 (N.D.N.Y 1990) (no standing where defendants used alias to receive packages at the residence of a business associate who had agreed to accept packages). Here, Earl cannot even point to another party who had agreed to give him the package. *See also Rakas*, 439 U.S. at 144 n.12 ("One of the main rights attaching to property is the right to exclude others . . . and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude."); *Givens*, 733 F.2d at 341 ("Property rights, while not determinative of an expectation of privacy, remain conceptually relevant to whether one's expectations are 'legitimate' or 'reasonable.' ").

F. Supp. 43 (N.D.N.Y 1990), provides some guidance. In *DiMaggio*, the defendants sent drug money to the known residences of the intended recipients but using fictitious personal or business names and also received packages of cocaine addressed to fictitious names and addressed not to their places of residence but to that of a business associate. *Id.* at 43–44. The *DiMaggio* court acknowledged that the defendants "did in fact subjectively expect that the contents of the Federal Express packages would remain private"; however, the court concluded that the defendants' expectations were not ones that society would accept as reasonable. *Id.* at 45. The court reasoned, "[t]he packages allegedly used in this case contained nothing on the surface to indicate that defendants had any connection with the packages." *Id.* at 46; *see also United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) (defendant who denies ownership interest does not have standing when he is not the addressee and does not reside at the delivery address).

¶ 17. The package in this case involves more (or less) than just a false name. Here, Earl provided no information about the sender. The package was addressed to both a fictitious name and a vacant apartment, leaving nothing at all to link the package to Earl. After flagging down the FedEx driver, Earl identified himself, and stated that he was picking up the package for Mark Harris. The objective manifestations of Earl's intent all lead to a conclusion that he sought to disassociate himself from the package—not that it was intended for him. Stated differently, there was nothing on the surface to indicate that Earl had any connection with the package, much less any dominion or control over it. Earl has failed to meet his burden to establish that he had a reasonable expectation of privacy in the package at the time of the search.

## CONCLUSION

¶ 18. While we agree that the expectation of privacy when using an alias to send or receive mail is something society may accept as reasonable, the coupling of a false name and a false address, along with an unknown sender and a statement that the package belongs to someone else, is not. We conclude that Earl did not have a legitimate expectation of privacy in the package intercepted by FedEx and later searched. We therefore find him without basis for challenging the search. We uphold the trial court's order denying his motion to suppress and affirm the judgment.[8]

*By the Court.*—Judgment affirmed.

---

[8] On appeal, we may affirm on different grounds than those relied on by the trial court. *Vanstone v. Town of Delafield*, 191 Wis. 2d 586, 595, 530 N.W.2d 16 (Ct. App. 1995). Furthermore, when we affirm on other grounds, we need not discuss our disagreement with the trial court's chosen grounds of reliance. *See Liberty Trucking Co. v. DILHR*, 57 Wis. 2d 331, 342, 204 N.W.2d 457 (1973).