COURT OF APPEALS
DECISION
DATED AND FILED

January 7, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP169-CR**

Cir. Ct. No. 2020CF193

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

CHRISTOPHER A. GORE,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Oneida County: MARTHA J. MILANOWSKI, Judge. *Affirmed*.

Before Stark P.J., Hruz and Gill, JJ.

¶1 GILL, J. Christopher A. Gore appeals from a judgment of conviction, entered upon his no-contest plea, to one count of homicide by use of a vehicle with a prohibited alcohol concentration. Citing **State v. Blackman**, 2017 WI 77, 377 Wis. 2d 339, 898 N.W.2d 774, Gore argues that the circuit court erred

by denying his motion to suppress the results of a blood draw. He also argues that his motion to suppress should have been granted because an officer informed Gore that he would seek a warrant if Gore refused to provide his consent for the blood draw.

¶2     Our state supreme court held in ***Blackman*** that an officer's reading of the Informing the Accused form to a driver under WIS. STAT. § 343.305(3)(ar)2. (2021-22)[1] rendered the driver's subsequent consent involuntary because law enforcement did not have probable cause to believe that the person was driving or operating a motor vehicle while under the influence of alcohol. *See **Blackman***, 377 Wis. 2d 339, ¶¶44, 51, 64-66. The court stated that a "driver who [is] not suspected of a drunk-driving offense would prevail at a refusal hearing and his [or her] operating privilege would not be revoked." ***Id.***, ¶5. Accordingly, the court held that the officer's statement, read from the Informing the Accused form, that the driver's operating privilege would be revoked or the driver would be subject to other penalties for refusing to consent to a blood draw was inaccurate and coerced the driver into consenting to the blood draw. ***Id***, ¶¶44, 51, 64-66.

¶3     Gore maintains that he involuntarily consented to the blood draw for two reasons. First, prior to his giving consent, an officer read him the Informing the Accused form, *see* WIS. STAT. § 343.305(4), despite the fact that he was not under arrest under § 343.305(3)(a) at that time. The officer proceeded under § 343.305(3)(ar)2. and read the following to Gore: "If you refuse to take any test

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that this agency requests, your operating privilege *will* be revoked and you will be subject to other penalties." *See* § 343.305(4) (emphasis added). According to Gore, the Informing the Accused form was inaccurately read to him because as in ***Blackman***, it was not certain that his operating privilege would be revoked at a refusal hearing. Gore asserts that because he was materially misinformed in this manner, his consent was involuntary. Second, Gore argues that the officer's statement to him that the officer would seek a warrant if Gore refused to provide his consent also rendered his consent involuntary.

¶4      We conclude that ***Blackman*** is distinguishable and the holding in that case does not require suppression of the results of Gore's blood draw. It is undisputed that the officer in this case was acting under WIS. STAT. § 343.305(3)(ar)2., that Gore was read the Informing the Accused form, and that Gore was not under arrest pursuant to § 343.305(3)(a). However, law enforcement had probable cause to believe that Gore was operating a motor vehicle while under the influence of alcohol, and Gore could have been arrested under § 343.305(3)(a) if he had refused a test under § 343.305(3)(ar)2. *See* § 343.305(3)(ar)2. ("If a person refuses to take a test under this subdivision, he or she may be arrested under par. (a)."). At that point, his operating privilege could have been revoked because "the officer had probable cause to believe [Gore] was driving or operating a motor vehicle while under the influence."[2] *See* § 343.305(9)(a)5.a. Moreover, the officer's statement that he would attempt to obtain a warrant if Gore refused to consent to a blood draw did not render Gore's consent involuntary. We therefore affirm Gore's judgment of conviction.

---

[2] Accordingly, we affirm on grounds other than those relied on by the circuit court. *See **State v. Earl**,* 2009 WI App 99, ¶18 n.8, 320 Wis. 2d 639, 770 N.W.2d 755.

**BACKGROUND**

¶5   The State charged Gore with one count each of homicide by intoxicated use of a vehicle and homicide by intoxicated use of a vehicle with a prohibited alcohol concentration.  Gore filed a motion to suppress the results of his blood draw, arguing that his consent to the blood draw was involuntary.  He claimed that he was coerced to consent to the blood draw because the Informing the Accused form read to him prior to his consent led him to believe that if he did not consent his operating privilege would be revoked.  He asserted that the reading of the Informing the Accused form was misleading as he was not under arrest for operating a motor vehicle while intoxicated (OWI) at the time it was read; the request for a blood draw was made under WIS. STAT. § 343.305(3)(ar)2.; and the blood draw request "was due solely to the fact that [Gore] was involved in a motor vehicle accident that involved death of a person."[3]  Therefore, according to Gore, our state supreme court's holding in *Blackman* applied to his circumstances and his consent was involuntary.

¶6   The circuit court held an evidentiary hearing on Gore's motion to suppress at which Officer Devon Gaszak and Lieutenant Jason Benbenek, both with the Minocqua Police Department, testified.  The following facts underlying Gore's charges are undisputed for purposes of our review of the suppression motion.  At 9:18 p.m. on July 12, 2020, law enforcement received information

---

[3] Before the circuit court, Gore also argued that his injuries sustained in the crash prevented him from freely and voluntarily consenting to the blood draw and that WIS. STAT. § 343.305(3)(ar) is unconstitutional on its face and as applied.  The court denied both arguments.  Gore does not challenge either of these decisions on appeal, and we will not consider them further.  *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998).

from dispatch that there had been a single-vehicle rollover crash. Four minutes later, Gaszak arrived at the scene of the crash. Upon his arrival, Gaszak observed a vehicle upside down in the parking lot of Minocqua Prime—a restaurant—and emergency medical technicians (EMTs) extracting an individual, later identified as Gore, from the vehicle. Another individual was ejected from the vehicle during the crash and was declared dead at the scene. Gore was the registered owner of the vehicle. Gaszak testified that the part of the road where the vehicle had crashed was "hardly … curve[d] at all."

¶7 The EMTs at the scene informed Officer Gaszak that Gore had "admitted to consuming intoxicants" and "they believed [Gore] was the driver" of the vehicle because his feet were tangled in the steering wheel. Gaszak agreed with the EMTs that Gore was the driver of the vehicle. He did so based on the fact that Gore was not ejected from the vehicle; the driver's seat belt was "stretched out," not "retracted" (demonstrating that it was worn during the accident); and the passenger's seat belt appeared unworn.

¶8 Officer Gaszak then spoke with Gore, who mentioned something about "golfing" and that "he was coming to Minocqua Prime to meet a friend." Gaszak testified at the suppression hearing that Gore "seemed to be confused and not remembering the crash," and Gaszak smelled an odor of alcohol coming from him. In addition, Gaszak stated that the "weather was clear. The roads were dry. It was still light out." After Gaszak spoke with Gore, Gore was transported by ambulance to a nearby hospital. Gaszak believed Gore was driving while intoxicated at the time of the accident and that Gore's intoxication caused the crash. More specifically, Gaszak believed that Gore had committed "homicide by intoxicated use of a vehicle."

¶9 At 10:18 p.m., Officer Gaszak contacted Lieutenant Benbenek and recited information to him about the accident, including that Gore was being transported to the hospital, had admitted to consuming alcohol, and smelled of alcohol. Gaszak requested that Benbenek travel to the hospital to obtain an evidentiary blood sample from Gore. Benbenek then went to the hospital, arriving at approximately 10:30 p.m., and after receiving permission from hospital staff, spoke with Gore, who "seemed very alert."

¶10 Gore informed Lieutenant Benbenek that he had consumed "a couple beers" prior to the crash and had not eaten that day. Benbenek testified that Gore's statement about not eating that day was significant to him because "if people don't eat, alcohol can absorb a little bit quicker into the system and heighten impairment." Benbenek then spoke with an EMT who was at the scene of the crash. The EMT informed Benbenek that he believed Gore was the driver of the vehicle.

¶11 Afterward, Lieutenant Benbenek returned to his squad car to complete a standard Informing the Accused form. *See* WIS. STAT. § 343.305(4). When Benbenek had completed the form, he reentered the hospital and read the form to Gore, including the statement: "If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties." *See id.*

¶12 Gore initially consented to a blood draw, but he then asked Lieutenant Benbenek what would happen if he said "no." Benbenek responded, stating that he "would contact a judge and look to get a warrant." Gore ultimately stated that he would consent to the blood draw. Lab results from the blood draw showed that Gore had a blood alcohol concentration of 0.239g/100mL.

¶13 Lieutenant Benbenek conceded at the suppression hearing that no officer "made any effort to obtain a search warrant to draw blood from Mr. Gore." Benbenek also stated that Gore was not under arrest at the time he read the Informing the Accused form but that Benbenek read the form to Gore based on department "OWI procedures" and the fact that he had probable cause that Gore was "[o]perating while intoxicated" and caused the death of another person.

¶14 The circuit court denied Gore's suppression motion.[4] The court assumed, without deciding, that Gore's consent was rendered involuntary "due to the misrepresentation of the consequences of his refusal to voluntarily submit to a blood draw" that occurred when Lieutenant Benbenek read him the Informing the Accused form. Nonetheless, the court held that "the doctrine of inevitable discovery applie[d] to prevent the blood draw results from being suppressed pursuant to the exclusionary rule."[5]

¶15 Gore later pled no contest to one count of homicide by use of a vehicle with a prohibited alcohol concentration. He was sentenced to five years of initial confinement followed by five years of extended supervision, and his operating privilege was revoked for a period of five years. Gore now appeals.

---

[4] The Honorable Patrick F. O'Melia presided over the suppression hearing and issued the order denying Gore's motion to suppress. Thereafter, Judge O'Melia retired from the bench, and the Honorable Martha J. Milanowksi was appointed to preside over the remainder of Gore's case.

[5] Gore filed a petition for leave to appeal the circuit court's order denying his suppression motion. We denied the petition.

## DISCUSSION

¶16    On appeal, Gore contends that the circuit court erred by denying his motion to suppress the results of his blood draw because his consent was involuntary.  In particular, Gore argues that his consent was involuntary because Lieutenant Benbenek told him that if he refused to take any test the agency requested: (1) Gore's operating privilege would be revoked, and he would be subject to other penalties; and (2) Benbenek "would contact a judge and look to get a warrant."

¶17    "Our review of an order granting or denying a motion to suppress evidence presents a question of constitutional fact." *State v. Tullberg*, 2014 WI 134, ¶27, 359 Wis. 2d 421, 857 N.W.2d 120 (citation omitted).  "We review a question of constitutional fact under a two-step inquiry:  First, we will uphold the circuit court's findings of fact unless those findings are clearly erroneous.  Second, we conduct an independent, de novo analysis of the application of constitutional principles to the facts found." *Blackman*, 377 Wis. 2d 339, ¶25.

¶18    We are also tasked with interpreting and applying WIS. STAT. § 343.305, the implied consent statute.  Interpretation and application of a statute are questions of law that we review de novo. *State v. Forrett*, 2022 WI 37, ¶5, 401 Wis. 2d 678, 974 N.W.2d 422.

¶19    "The Fourth Amendment ordinarily requires a search warrant for a blood draw unless one of the exceptions to the warrant requirement exists." *Blackman*, 377 Wis. 2d 339, ¶4.  One such exception is consent, which requires the State to prove by clear and convincing evidence that consent was, in fact, given and that it was voluntary. *Id.*, ¶54. Factors relevant to the voluntariness of consent include "whether the police used deception, trickery, or misrepresentation

in their dialogue with the defendant to persuade him [or her] to consent." *Id.*, ¶59 (citation omitted).

¶20 "Wisconsin has passed an implied consent law, which is designed to facilitate the gathering of evidence to remove drunk drivers from the road." *State v. Prado*, 2021 WI 64, ¶20, 397 Wis. 2d 719, 960 N.W.2d 869. Under WIS. STAT. § 343.305(2), as applicable here, any person who drives or operates a motor vehicle upon Wisconsin's public highways "is deemed to have given consent to one or more tests of his or her" blood "for the purpose of determining the presence or quantity in his or her blood" of alcohol "when requested to do so by a law enforcement officer under sub. (3)(a) … or when required to do so under sub. (3)(ar)." *See also State v. Brar*, 2017 WI 73, ¶21, 376 Wis. 2d 685, 898 N.W.2d 499 (discussing Wisconsin's implied consent law).

¶21 WISCONSIN STAT. § 343.305(3)(a) and (ar) outline the specific circumstances in which § 343.305(2) applies. Under § 343.305(3)(a), subsec. (2) applies in two situations. First, subsec. (2) applies "[u]pon arrest of a person for violation of" a host of OWI-related offenses, including homicide by intoxicated use of a vehicle.[6] *See* § 343.305(3)(a); WIS. STAT. § 940.09. Second, subsec. (2) applies "upon arrest subsequent to a refusal under par. (ar)." *See* § 343.305(3)(a). In turn, § 343.305(3)(ar)2. states that subsec. (2) applies when "a person is the operator of a vehicle that is involved in an accident that causes the death of or great bodily harm to any person and the law enforcement officer has reason to believe that the person violated any state or local traffic law." Under

---

[6] This court has previously referred to this first clause in WIS. STAT. § 343.305(3)(a) as "the intoxicated driver provision." *State v. Heimbruch*, 2020 WI App 68, ¶7, 394 Wis. 2d 503, 950 N.W.2d 916. We do the same here.

§ 343.305(3)(ar)2., "an officer may request a blood draw without having a scintilla of a suspicion that the driver is intoxicated. The officer need have reason to believe only that a driver violated a state or local traffic law and was in an accident that caused great bodily harm." ***Blackman***, 377 Wis. 2d 339, ¶34. "If a person refuses to take a test under [para. (ar)2.], he or she may be arrested under par. (a)." Sec. § 343.305(3)(ar)2.

¶22 WISCONSIN STAT. § 343.305(4) dictates that a law enforcement officer must read the Informing the Accused form[7] to a driver "[a]t the time that a chemical test specimen is requested under" paras. (3)(a) or (ar). "The form is 'designed to inform drivers of the rights and penalties applicable to them.'" ***Prado***, 397 Wis. 2d 719, ¶22 (citation omitted). In pertinent part, the Informing the Accused form tells the driver that one or more of the situations in paras. (3)(a) or (ar) apply and reads: "If you refuse to take any test that this agency requests, your operating privilege *will* be revoked and you will be subject to other penalties." Sec. 343.305(4) (emphasis added).

¶23 WISCONSIN STAT. § 343.305(9)(a) "provides the penalty for refusing a *post-arrest* request for a chemical test under" § 343.305(3)(a), *see* ***Blackman***, 377 Wis. 2d 339, ¶41, and states that "[i]f a person refuses to take a test under sub. (3)(a), the law enforcement officer shall immediately prepare a notice of intent to revoke, by court order under sub. (10), the person's operating privilege," § 343.305(9)(a). The notice of intent to revoke shall contain several pieces of information outlined in § 343.305(9)(a)1.-6., including that "prior to a request

---

[7] "The form is set forth verbatim in WIS. STAT. § 343.305(4)." ***State v. Blackman***, 2017 WI 77, ¶17 n.4, 377 Wis. 2d 339, 898 N.W.2d 774.

under sub. (3)(a), the officer had placed the person under arrest for" an OWI violation "or had requested the person to take a test under sub. (3)(ar)." Sec. 343.305(9)(a)1.

¶24　A driver may request a refusal hearing on the revocation.[8]　Wɪs. Sᴛᴀᴛ. 343.305(9)(a)4.　At a refusal hearing, the contested issues are limited to "the State proving (a) that the officer had probable cause to believe that the driver was driving or operating a motor vehicle 'under the influence'; (b) that the officer complied with reading the Informing the Accused form …; and (c) that the driver refused to permit the blood test."　*See* ***Blackman***, 377 Wis. 2d 339, ¶44; § 343.305(9)(a)5.

¶25　In ***Blackman***, our state supreme court explained that Wɪs. Sᴛᴀᴛ. § 343.305(3)(ar)2. differs from the language in the Informing the Accused form found in § 343.305(4). ***Blackman***, 377 Wis. 2d 339, ¶38.

> The form states that if a driver refuses to take any test under § 343.305(3)(ar)2., the driver's "operating privilege *will* be revoked" and the driver "*will* be subject to other penalties." The statute states only that if a driver refuses to take any test under § 343.305(3)(ar)2. the driver may be arrested.　The form, therefore, does not comport with § 343.305(3)(ar)2.

***Blackman***, 377 Wis. 2d 339, ¶38.　Thus, the court stated, the proper advice to a driver under § 343.305(3)(ar)2. *who is not suspected of driving under the influence of alcohol* is that his or her operating privilege will be revoked if he or she fails to request a refusal hearing.　***Blackman***, 377 Wis. 2d 339, ¶38.　This phrasing is

---

[8] "If no request for a hearing is received" within the statutorily provided deadline, "the revocation … commences." Wɪs. Sᴛᴀᴛ. § 343.305(9)(a)4.

necessary because any "driver who [is] not suspected of a drunk-driving offense would prevail at a refusal hearing and his [or her] operating privilege would not be revoked." *Id.*, ¶5 (citing § 343.305(9)(a)5.a.).

¶26 As applied to the facts in that case, our state supreme court concluded that the officer incorrectly informed Blackman, under WIS. STAT. § 343.305(3)(ar)2., "who was not suspected of a drunk-driving offense," that "his operating privilege would be revoked if he refused to submit to a blood draw." *Blackman*, 377 Wis. 2d 339, ¶5. More specifically, the State could not prove that law enforcement had "probable cause to believe that Blackman was driving or operating a motor vehicle while under the influence of alcohol." *Id.*, ¶44. Thus, "Blackman's operating privilege would not have been revoked at the refusal hearing." *Id.* The court went on to conclude that the officer's actions in that case, including his misstatement of the law by reading the Informing the Accused form, rendered the defendant's consent to a blood draw involuntary.[9] *Id.*, ¶¶63-66.

¶27 Turning back to the facts of this case, it is clear that Lieutenant Benbenek acted under WIS. STAT. § 343.305(3)(ar)2. because Gore was involved in an accident that caused the death of his passenger. Benbenek and Officer Gaszak believed that Gore had violated a state law; specifically, they believed he had committed homicide by intoxicated use of a vehicle. It is also clear that Gore was never formally arrested prior to the blood draw, so § 343.305(3)(a) does not immediately apply.

---

[9] WISCONSIN STAT. §§ 343.305(4) and 343.305(9) have not been amended since the *Blackman* decision.

¶28     The next question becomes whether Lieutenant Benbenek correctly informed Gore: "If you refuse to take any test that this agency requests, your operating privilege *will* be revoked and you will be subject to other penalties." *See* WIS. STAT. § 343.305(4) (emphasis added).  The State argues that ***Blackman*** does not require suppression of the blood draw in this case because officers had probable cause to believe that Gore was driving or operating a motor vehicle while under the influence of alcohol.[10]  Conversely, Gore contends that ***Blackman*** is directly on point because he had not been arrested for an OWI-related offense prior to a blood draw request under § 343.305(3)(a).  Gore also argues that officers did not have the requisite probable cause to arrest him for an OWI-related offense.

¶29     We agree with the State that the holding in ***Blackman*** is limited to situations in which an officer read a driver the Informing the Accused form under WIS. STAT. § 343.305(4) but did not suspect the driver of being under the influence of alcohol.  While § 343.305(3)(ar)2. "does not provide that if the driver refuses to take a test, the driver's operating privilege will be revoked,"

---

[10] In ***Blackman***, the State made a similar argument, asserting that the Informing the Accused form accurately informed Blackman of the consequences of refusing to give a blood sample because "revocation is ultimately available under [WIS. STAT.] § 343.305(3)(ar)2. through §§ 343.305(3)(a) and 343.305(9)(a)."  ***Blackman***, 377 Wis. 2d 339, ¶35.  The State further suggested in ***Blackman*** that

> if the driver refuses a test under [§] 343.305(3)(ar)2., … the officer can arrest the driver.  On arrest, the driver comes under § 343.305(3)(a), and the officer can request the driver to submit to a blood test under [§] 343.305(3)(a).  If the driver refuses to submit to a blood test under § 343.305(3)(a), the officer may issue a notice of intent to revoke the person's operating privilege.  [Sec.] 343.305(9)(a).

***Blackman***, 377 Wis. 2d 339, ¶46.  Ultimately, the court never directly addressed the State's argument because it was undisputed that law enforcement did not have probable cause under § 343.305(9)(a)5. *See **Blackman***, 377 Wis. 2d 339, ¶¶48-51.

13

*Blackman*, 377 Wis. 2d 339, ¶33, that statute permits an officer to arrest the driver under § 343.305(3)(a) if the driver refuses a test. If a driver refuses a test under § 343.305(3)(ar)2., is arrested under § 343.305(3)(a), and requests a refusal hearing, the State must prove "that the officer had probable cause to believe that the driver was driving or operating a motor vehicle 'under the influence.'" *See Blackman*, 377 Wis. 2d 339, ¶44; § 343.305(9)(a)5. Where the officer has probable cause, his or her statement to a driver that the driver's operating privilege will be revoked if he or she refuses a test under § 343.305(3)(ar)2. is accurate.

¶30 Gore contends that this interpretation of WIS. STAT. § 343.305 "would lead to absurd results." Gore states that our interpretation would mean that "whenever a defendant raise[s] a *Blackman* challenge, the State c[an] always fall back on the argument" that "[t]he *Blackman* remedy doesn't attach here because the officer already had probable cause." "It is a well-settled proposition that statutory language be read in context and in a reasonable manner so as 'to avoid absurd or unreasonable results.'" *State v. Matthews*, 2019 WI App 44, ¶17, 388 Wis. 2d 335, 933 N.W.2d 152 (citation omitted). "It is not enough for a court to find that upon application of the plain meaning of a statute, a given outcome is foolish." *Id.* (citation omitted). Rather, "a court so finding must be convinced that the result is so absurd that [the legislature], not the court, could not have intended such a result." *Id.* (alteration in original; citation omitted).

¶31 We disagree with Gore that our interpretation of WIS. STAT. § 343.305 produces absurd results. Pursuant to the purpose behind the implied consent law—to "remove drunk drivers from the road," *see Prado*, 397 Wis. 2d 719, ¶20—it is not "unthinkable" for the legislature to permit the revocation of a driver's operating privilege upon a refusal under § 343.305(3)(ar)2. if probable

14

cause existed to believe the driver was operating a motor vehicle while under the influence of alcohol. *See Matthews*, 388 Wis. 2d 335, ¶17.

¶32 Gore further argues that his consent was involuntary in that the officers "concealed" the underlying reasons for a blood draw request under WIS. STAT. § 343.305(3) as no one told him that they were suspicious that he had driven under the influence or that he was going to be arrested for OWI. He also argues Lieutenant Benbenek's statement to Gore that he would seek a warrant if Gore refused to provide his consent for the blood draw rendered his consent involuntary. In support of these arguments, Gore cites *State v. Munroe*, 2001 WI App 104, ¶¶11-12, 244 Wis. 2d 1, 630 N.W.2d 223, in which this court held that officers' falsely expressed motive for asking to enter a defendant's hotel room rendered the defendant's consent involuntary. More specifically, two armed officers told the defendant that they wanted to enter his hotel room "to check his identification" pursuant to a local ordinance. *Id.*, ¶11. In reality, however, the officers "were on a drug, gun, and prostitution interdiction." *Id.* Once the defendant identified himself, officers asked him if they could "search his room for anything illegal." *Id.*, ¶5. After initially refusing, the defendant eventually permitted the officers to search the room. *Id.*

¶33 We held that once the officers finished checking the defendant's identification, "their 'license' granted by [the defendant's] acquiescence to their presence in his room vanished, because the lawfulness of an officer's actions turns

on the officer's role or function at the time."[11]  *Id.*, ¶11.  "Their continued questioning and their renewed request to search made [the defendant's] 'consent' not voluntary."  *Id.*

¶34    According to Gore, "[d]isguising the fact that officers had probable cause to arrest Mr. Gore is akin to the officers [in ***Munroe***] disguising the[ir] 'hotel interdiction' purpose."  The issue here, however, has nothing to do with the reason for the blood draw request, but is ultimately whether Gore was misadvised about the consequences of a refused blood draw.  As explained above, Gore was not misadvised under WIS. STAT. § 343.305.  Gore cites no authority dictating that an officer must state his or her underlying reason for requesting a blood draw.  In other words, there is no authority for the proposition that that an officer must inform a driver that he or she believes the driver is intoxicated, *see* § 343.305(3)(a), or that the officer believes the driver was involved in a car accident that caused the death of another person and that the driver violated a state or local traffic law, *see* § 343.305(3)(ar)2.

¶35    Further, the facts in this case are unlike those presented in ***Munroe***. Lieutenant Benbenek correctly informed Gore that he was seeking his consent for a blood draw, and, importantly, Benbenek did not state that he would definitively *obtain* a warrant if Gore did not consent.  Rather, Benbenek stated that he would *seek* to obtain a warrant.    Such a statement does not invalidate consent,

---

[11] In ***State v. Munroe***, 2001 WI App 104, ¶6, 244 Wis. 2d 1, 630 N.W.2d 223, the defendant testified that officers informed him that if he did not allow them to search the hotel room, "they would bring over a drug-sniffing dog."  One of the officers who testified at the suppression hearing denied that fact.  *Id.*  The circuit court "indicated that it believed the officer but that it also believed that it was not important whether the officers threatened to bring over a drug-sniffing dog or not."  *Id.*  Contrary to Gore's assertion on appeal, the ***Munroe*** court did not address the importance of this fact to the consent question.

particularly where "the expressed intention to obtain a warrant is genuine." *See State v. Artic*, 2010 WI 83, ¶41, 327 Wis. 2d 392, 786 N.W.2d 430 (citation omitted); 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 8.2(c) (6th ed. 2024) (stating that generally "[c]onsents given in response to a threat to seek a warrant have been upheld as voluntary"). Even so, as we describe later in detail, the officers in this case had probable cause to obtain a search warrant. *Cf. Artic*, 327 Wis. 2d 392, ¶42 n.7 (stating that an officer's "threat to *obtain* a search warrant is likely to be held to invalidate a subsequent consent if there were not then grounds upon which a warrant could issue" but that such a threat is "likely not to affect the validity of the consent if the police then had probable cause upon which a warrant could issue" (citation omitted)).

¶36    In addition, unlike WIS. STAT. § 343.305(3)(a), an officer is under no duty to arrest a driver under § 343.305(3)(ar)2. prior to reading him or her the Informing the Accused form. Likewise, the fact that Lieutenant Benbenek could have proceeded under § 343.305(3)(a)—specifically, under the intoxicated driver provision stating that subsec. (2) applies "[u]pon arrest of a person for violation of" an OWI-related offense—did not prevent Benbenek from proceeding under § 343.305(3)(ar)2., which did not require an arrest prior to implementing subsec. (2). The fact that Gore was never formally arrested under the second clause in § 343.305(3)(a)—stating that subsec. (2) applies "upon arrest subsequent to a refusal under par. (ar)"—is similarly immaterial to the facts of this case. Indeed, Benbenek would not have had the authority to arrest Gore under that

clause at the time he read the Informing the Accused form because Gore had not refused to provide a blood draw.[12]

¶37    Therefore, if probable cause existed to arrest Gore, then Lieutenant Benbenek made an accurate statement to Gore that if he refused a blood draw, his operating privilege would be revoked.  The probable cause test "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation omitted).  "It 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'"  *Id.* (citation omitted).  "Probable cause is a 'flexible, common-sense measure of the plausibility of particular conclusions about human behavior.'"  *State v. Lange*, 2009 WI 49, ¶20, 317 Wis. 2d 383, 766 N.W.2d 551 (citation omitted).  "The question of probable cause must be assessed on a case-by-case basis, looking at the totality of the circumstances." *Id.*

¶38    More specifically,

> [p]robable cause to arrest for operating while under the influence of an intoxicant refers to that quantum of evidence within the arresting officer's knowledge at the time of the arrest that would lead a reasonable law enforcement officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant.

*Id.*, ¶19.  In addition, "[t]he police force is considered as a unit and where there is police-channel communication to the arresting officer and he [or she] acts in good faith thereon, the arrest is based on probable cause when such facts exist within

---

[12] We note that the better practice in this situation would have been to arrest Gore under WIS. STAT. § 343.305(3)(a) and then read him the Informing the Accused form.

18

the police department." ***State v. Mabra***, 61 Wis. 2d 613, 625-26, 213 N.W.2d 545 (1974).

¶39     Probable cause plainly existed to arrest Gore for OWI. We begin by noting that Lieutenant Benbenek and Officer Gaszak reasonably believed that Gore was the driver of the crashed vehicle. The EMTs from the scene of the crash informed both Benbenek and Gaszak that they believed Gore was the driver. Gaszak also reached this conclusion based on the fact that Gore was not ejected from the vehicle and the driver's seat belt appeared to have been used during the crash. Further, Gore was the registered owner of the vehicle.

¶40     In addition, Gore was in a serious one-vehicle accident on part of a road that was, according to Officer Gaszak, relatively straight and "hardly … curve[d] at all." *See* ***State v. Kasian***, 207 Wis. 2d 611, 622, 558 N.W.2d 687 (Ct. App. 1996) (concluding an officer had probable cause that a driver had operated a motor vehicle while intoxicated based, in part, on the fact that the officer "came upon the scene of a one-vehicle accident"). The time of the crash, shortly after 9:00 p.m., is also noteworthy. "While this is not as significant as when poor driving takes place at or around 'bar time,' it does lend some further credence to [law enforcement's] suspicion that [Gore] was driving while intoxicated." *See* ***State v. Post***, 2007 WI 60, ¶36, 301 Wis. 2d 1, 733 N.W.2d 634. It is also significant that weather was not a factor in the crash and the roadway was dry. "Thus traffic and road conditions do not explain [Gore's] driving." *See* ***Lange***, 317 Wis. 2d 383, ¶29.

¶41     Furthermore, Officer Gaszak smelled alcohol coming from Gore, and Gore informed both Lieutenant Benbenek and the EMTs that he had been consuming intoxicants. Gore also told Benbenek that he had not eaten that day,

which is significant given Benbenek's understanding surrounding the effect of drinking alcohol on an empty stomach.

## CONCLUSION

¶42 In sum, this case is factually and legally distinguishable from *Blackman*. Law enforcement suspected that Gore was operating a vehicle that was involved in an accident that caused the death of another person. *See* WIS. STAT. § 343.305(3)(ar)2. Law enforcement also had probable cause to believe that Gore was operating a motor vehicle while under the influence of alcohol. On this basis, Lieutenant Benbenek's reading of the Informing the Accused form was an accurate description of what would occur under § 343.305(3)(a) and (9)(a)5. if Gore refused a blood draw under § 343.305(3)(ar)2. Likewise, Benbenek's statement that he would seek to obtain a search warrant was not unconstitutionally coercive. We therefore affirm Gore's judgment of conviction.

*By the Court.*—Judgment affirmed.

Recommended for publication in the official reports.